MATTHEW J. KANE, CHIEF JUSTICE.
J. F. SHARP, VICE CHIEF JUSTICE.
SUMMERS HARDY,
JOHN B. TURNER,    } JUSTICES.
CHAS. M. THACKER,

---

## UNION COAL CO. *et al.* v. WOOLEY.

No. 4122.   Opinion Filed November 30, 1915.

Rehearing Denied January 11, 1916.

(154 Pac. 62.)

1. **PLEADING—Motion to Make Definite and Certain—Requisites.**
A motion to make a pleading more definite and certain must point out wherein the pleading is indefinite and uncertain, and, if it fails to do so, it is not error to overrule it.

2. **APPEAL AND ERROR—Discretionary Ruling—Pleading—Motion to Make Certain.** A motion of this kind is addressed largely to the discretion of the trial court, and a ruling thereon will not be reversed except for an abuse of such discretion.

Union Coal Co. et al. v. Wooley.

3.   **CORPORATIONS—Insolvency—Directors—Right to Prefer Creditor.** A director of an insolvent corporation is a trustee for the creditors of such corporation, and will not be allowed to prefer his own antecedent unsecured debt to the debts of other creditors of such corporation who would lose the entire amount due them if such preference were allowed to stand.

4.   **SAME—Preference of Debts of Directors—Jurisdiction in Equity.** Where the directors of an insolvent corporation, upon the sale of its entire property, received a large sum of money, some of which they used to pay debts of the corporation, but paid themselves about $8,000 for sums they claimed to be due them from the corporation, but paid nothing to the plaintiff, a court of equity has jurisdiction of an action to charge such directors as trustees, and this remedy is not abolished by the statute defining the obligations and liabilities of directors.

5.   **SAME—Personal Judgment Against Directors.** Where in such case the directors receive the purchase price of the property of the insolvent corporation in cash, and mingle it with their own funds, it is not error to render a personal judgment against them in favor of a creditor of the corporation who has received nothing on his debt.

6.   **CORPORATIONS—Action for Tort—"Creditor."** Where a party has an action for a tort pending against a corporation, which is afterwards reduced to judgment, he is a creditor of such corporation before the actual rendition of the judgment. Rev. Laws 1910, sec. 2893.

7.   **CORPORATIONS—Sale of Property—Right of Creditors.** Where there is neither a consolidation nor a merger, and one corporation buys all the property of another, for full value, and without fraud, the property will pass to the purchasing corporation free from the claims of creditors of the selling corporation.

8.   **SAME—Trust Fund—Duty of Purchasing Corporation.** In such case the money paid for the property of the selling corporation passes to its directors, and they hold it as a trust fund for the payment of creditors, and the residue, if any, for the stockholders, and the purchasing corporation is not bound to see to the proper application of the purchase money by the directors of the selling corporation.

9.   **SAME—Notice of Insolvency—Effect.** Notice of the purchasing corporation in such case that the selling corporation is insolvent is not notice that the directors intend to misapply the purchase money.

(Syllabus by Devereux, C.)

*Error from District Court, Pittsburg County;*
*Preslie B. Cole, Judge.*

Action by Tom Wooley against the Union Coal Company, a corporation, and others. Judgment for plaintiff, and defendants bring error. Affirmed in part and reversed in part.

This was an action by the defendant in error, plaintiff below, against the plaintiffs in error, defendants below, to hold the defendants liable to the payment of a judgment for $5,697.12 recovered by him against the Adamson Coal & Mining Company. The findings of fact by the trial court clearly state the questions raised, and are as follows:

"That on May 7, 1909, plaintiff filed suit in the district court in and for Pittsburg county, at McAlester, for the sum of $20,000, against the Adamson Coal & Mining Company; thereafter on or about the 14th day of April, 1910, said plaintiff recovered judgment in said court against the Adamson Coal & Mining Company in the sum of $5,697.12, and that on or about the 4th day of August, 1909, the Adamson Coal & Mining Company sold all its property and assets to the Union Coal Company, and that said Adamson Coal & Mining Company ceased to do business, having disposed of all its property.

"That the consideration paid by the Union Coal Company for the property of the Adamson Coal & Mining Company was $28,900. Out of this sum the Union Coal Company retained $12,783.04, and paid the same to various creditors of the Adamson Coal & Mining Company, and said Union Coal Company turned over and paid to the Adamson Coal & Mining Company the sum of $16,116.96. Out of this sum the stockholders of said Adamson Coal & Mining Company, Peter Adamson, Jr., Maudie Adamson, and A. Z. Rudd appropriated to their own use and benefit about $8,000 of said sum.

"The court further finds that at the time said sale was made by the Adamson Coal & Mining Company of its assets and property to the Union Coal Company, and for about three years prior thereto, said Adamson Coal & Mining Company was insolvent and in a failing condition, and the same was known to the Union Coal Company at the time it bought the assets and property of the Adamson Coal & Mining Company.

"The court further finds that the Union Coal Company knew of the claim of plaintiff against the Adamson Coal & Mining Company at the time it bought the property of said Adamson Coal & Mining Company, and that it knew said suit was pending and knew of the claims and demands of the plaintiff against the Adamson Coal & Mining Company."

There was judgment for the plaintiff below against all of the defendants, and from this judgment the defendants below bring the case to this court by petition in error and case-made. .

*Hurley, Mason & Senior, Fred A. Fulghum, W. J. Gregg,* and *Carl C. Magee,* for plaintiffs in error Adamson and Rudd.

*Wright & Boyd,* for plaintiff in error Union Coal Company.

*Geo. W. Sutton* and *W. N. Redwine,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). Separate petitions in error and assignments of error are filed on behalf of the Adamsons and Rudd and the Union Coal Company, and, as they present different questions, we will first consider those filed on behalf of the Adamsons and Rudd.

Their first assignment of error is that the court erred in overruling a motion to make the petition more definite and certain. This motion is as follows:

"To require the plaintiff to make his allegations of fact which constitute his cause of action against these defendants more definite and certain."

It was not error to overrule this motion, because it did not point out wherein the petition was indefinite and uncertain (*Grimes v. Cullison*, 3 Okla. 268, 41 Pac. 355; *Cockrell v. Schmidt*, 20 Okla. 207, 94 Pac. 521, 129 Am. St. Rep. 737, and *Kuchler v. Weaver*, 23 Okla. 420, 100 Pac. 915, 18 Ann. Cas. 462), and also a motion of this character is largely addressed to the discretion of the court, and a ruling thereon will not be reversed, except for an abuse of such discretion (*Ft. Smith & Western R. Co. v. Ketis*, 26 Okla. 696, 110 Pac. 661).

These plaintiffs in error also filed a demurrer on the grounds: (1) That the petition does not state facts sufficient to constitute a cause of action; (2) that the joinder of parties defendant is defective; and (3) because several causes of action are improperly joined. The questions raised by the demurrer are disposed of in our decision on the main question presented, which is whether a director of an insolvent corporation can prefer his debts to the prejudice of other creditors, and this depends on whether a director is a trustee for creditors. This question has never been expressly decided in this state, and, looking to other jurisdictions, the authorities are hopelessly in conflict.

In *Curran v. Arkansas*, 15 How. 304, 14 L. Ed. 705, it is held that the assets of an insolvent corporation are a fund for the payment of its debts, and, if they have

gone into the hands of other than *bona fide* purchasers, leaving corporate debts unpaid, such persons take the property charged with a trust in favor of creditors, which a court of equity will enforce.

In *Drury v. Cross*, 7 Wall. 299, 19 L. Ed. 40, it appeared that a corporation had conveyed its property so as to protect its directors against liability as indorsers for it, and in condemning the transaction the court says:

"The transactions which this case discloses cannot be sustained by a court of equity. The conduct of the directors of this railroad corporation was very discreditable and without authority of law. It was their duty to administer the important matters committed to their charge, for the mutual benefit of all parties interested, and in securing an advantage to themselves, not common to the other creditors, they were guilty of a plain breach of trust."

In *Sutton Mfg. Co. v. Hutchinson*, 63 Fed. 496, 11 C. C. A. 320, in which the decision was rendered by Circuit Justice Harlan, it is held that, when a private corporation is dissolved or becomes insolvent, and determines to discontinue the prosecution of its business, its property is thereafter affected by an equitable lien or trust for the benefit of creditors, and that the duty in such case of preserving it for creditors rests upon the directors or officers to whom has been committed the authority to control or manage its affairs, who, if not technically trustees, hold the corporate assets in a fiduciary relation to creditors.

In 10 Cyc. 803, it is said:

"The assets of an insolvent corporation being a trust fund for creditors, which necessarily means for all creditors, the directors in charge of such assets stand in the position of trustees for the creditors, and cannot so deal

with them as to prefer themselves as creditors for any past indebtedness of the corporation in favor of such directors, unless at the time when such past indebtedness was created it was agreed that they should be so preferred."

On page 805 it is said: .

"In two or three American jurisdictions the contrary and regrettable doctrine obtains that the directors may use the knowledge which they possess of its impending insolvency, so as to prefer or secure themselves as its creditors, to the disadvantage and postponement of its general creditors."

In *Olney v. Conanicut Land Co.*, 16 R. I. 597, 18 Atl. 181, 5 L. R. A. 361, 27 Am. St. Rep. 767, it is held that the directors of an insolvent corporation are by virtue of their position debarred from preferring debts of the corporation due to themselves, and in the opinion it is said:

"Indeed, no cases that we know of deny a fiduciary relation of directors to stockholders, however they may differ in the use of terms to describe it. This relation has led logically to the conclusion that, in case of insolvency, the assets of the corporation being no longer held for the benefit of stockholders, but for the benefit of creditors, the directors owe to the creditors the duty of a trustee. This duty is clearly stated by Clifford, J., in *Bradley v. Converse*, 4 Cliff. 375: 'Assets of an incorporated company are regarded in equity as held in trust for the payment of the debts of the corporation, and courts of equity will enforce the execution of such trusts in favor of the creditors, even when the matter in controversy may not be cognizable in a court of law. Such assets are usually controlled and managed by directors or trustees; but courts of equity will not permit such managers, in dealing with the trust estate in the exercise of the powers of their trust, to obtain any undue advantage for themselves, to the injury or prejudice of those for whom they are acting in a fiduciary relation.' "

The same rule that directors of an insolvent corporation are held as trustees for creditors is announced in Jones on Insolvent and Failing Corporations, sec. 55.

In *Lyons-Thomas Hardware Co. v. Perry Stove Co.*, 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802, the question under consideration is discussed in an elaborate note, in which it is said:

"The most serious conflict between the courts on the question of preferences by insolvent corporations is in reference to the preference of debts of directors. In a few states the doctrine that corporations may prefer creditors is followed to its full extent, and preferences to the directors themselves, although obtained by virtue of their superior knowledge of the condition of the corporation, are upheld."

And in the note it is said:

"But the great weight of authority denies the right of directors of a corporation to take advantage of their position to obtain preferences for themselves or unsecured debts"—citing many cases.

In Wait on Insolvent Corporations, sec. 1621, it is said in part, in speaking on the question of the general right of a corporation to prefer its creditors:

"The practical working of the rule sustaining corporate preferences is monstrous. The unpreferred creditors have only a myth or a shadow left to which resort can be had for payment of their claims; a soulless, fictitious, unsubstantial entity that can be neither seen nor found. The capital and assets of the corporation, the creditors' trust fund, may under this rule of law be carved out and apportioned among a chosen few, usually the family connections or immediate friends of the officers making the preferences."

This language is very applicable to cases where the directors preferred themselves. See Jones on Insolvent and Failing Corporations, sec. 132.

The plaintiffs in error rely upon the cases holding that directors are not trustees, and especially on *Corey v. Wadsworth*, 118 Ala. 488, 25 South. 503, 44 L. R. A. 766, in which the doctrine that a director of an insolvent corporation is not a trustee for creditors, and consequently that he can pay his own claim in preference to other creditors, is upheld in the opinion, but this is opposed to the great weight of authority, and, as we think, of reason, and the true rule is that the director of an insolvent corporation is a trustee of the corporate assets for creditors, and that he cannot prefer a prior unsecured debt of his own to the injury of other creditors. But the plaintiffs in error contend that their liability is fixed by the provisions of Rev. Laws 1910, sec. 1254. But this action is not brought under this section, but in equity to reach the trust fund that has come into the hands of these plaintiffs in error, and for which in equity they should account. *C., R. I. & P. Ry. Co. v. Howard*, 7 Wall. 392, at 416, 19 L. Ed. 117, cited with approval by this court in *Collins v. Kaw City Mill & Elev. Co.*, 26 Okla. 641, 110 Pac. 734, where it is said:

"Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosesoever possession it may be transferred, unless it has passed into the hands of a *bona fide* purchaser; and the rule is well settled that the stockholders are not entitled to any share of the capital stock nor to any dividend of the profits until all the debts of the corporation are paid. Assets derived from the sale of the capital stock of the corporation, or of its property, become, as respects cred-

itors, the substitutes for the things sold, and, as such, they are subject to the same liabilities and restrictions as the things sold were before the sale, and while they remained in the possession of the corporation."

The case of *Topeka Paper Co. v. Oklahoma Pub. Co.,* 7 Okla. 220, 54 Pac. 455, is cited by plaintiffs in error to sustain their contention, but the facts in that case were that two corporations consolidated, and it was attempted to hold the directors liable for the debts of one of the corporations, and the court held that they were not liable, on the ground that it was not shown that the value of the property of the corporation was by the act of the stockholders destroyed, impaired, or lessened in value.

This case, therefore, is no authority for one like the present, where the directors sell every particle of property the corporation owned, go out of business, and use the money to pay debts due themselves.

Complaint is also made that the court erred in rendering a personal judgment against these plaintiffs in error, but, under the evidence in this case, if a personal judgment could not be rendered, the defendant in error would be without any remedy, for the plaintiffs in error received the payment in money, not in specific property of the corporation. If the contention of the plaintiffs in error is sound, a trustee can always escape liability by squandering or concealing the trust fund. That a court of equity can render a personal judgment when otherwise the plaintiff would be without remedy is settled. *Murray v. Speed, ante, p.* 31, 153 Pac. 181.

That the defendant in error was a creditor before his demand was reduced to judgment is settled by the provisions of Rev. Laws 1910, sec. 2893, which provides:

"A creditor, within the meaning of this chapter, is one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money."

And see *Shelby v. Ziegler*, 22 Okla. 799, 98 Pac. 989.

The judgment, therefore, against Peter Adamson, Jr., Maudie Anderson, and A. Z. Rudd should be affirmed.

Coming to the matters presented by the Union Coal Company, a different question is presented. There is no evidence that it did not pay the full value of the property purchased from the Adamson Coal Company, or that it had any fraudulent intent in making the purchase, or that it had any reason to suspect that the directors of the Adamson Coal Company did not intend to pay the just debts of that corporation, and the payment was made in cash. The fact that the Union Coal Company knew that the Adamson Company was in a failing condition and insolvent does not render the purchase by the Union Coal Company fraudulent; for to so hold would render any sale of property by an insolvent fraudulent, even where he got full value for the property sold.

The fact that the Union Coal Company knew that the Adamson Company was insolvent does not carry with it notice that the directors of that company would misapply the purchase money; for no one is bound to assume that the party with whom he deals is a wrongdoer, or that he intends to commit a fraud. *United States v. Detroit, etc., Co.*, 200 U. S. 321, 332, 26 Sup. Ct. 282, 50 L. Ed. 499. That the vendee must participate in the fraudulent intent was decided by this court in *Oklahoma Nat. Bank v. Cobb*, 52 Okla. 654, 153 Pac. 134.

In *Vicksburg City Telegraph Co. v. Citizens' Telegraph Co.*, 79 Miss. 341, 30 South. 725, 89 Am. St. Rep. 656, it was held that, where there has been neither a consolidation nor a merger, but a sale by one corporation of its property to another, if made for a valuable consideration and in good faith, the property will pass to the purchasing corporation, free from the claims of creditors, and the same rule prevails as between individuals; and see *Hawkins v. Central R. R. Co.*, 119 Ga. 159, 46 S. E. 82. And in 1 Thompson on Corporations, sec. 377, it is said:

"The foregoing does not, it is assumed, apply to a *bona fide* sale, for a good consideration, by one company, of all its properties to another. In such case the consideration of the sale would pass to the directors of the selling company, and they would hold it as a trust fund for their creditors first, and their shareholders next. It would be a mere substitution of trust funds, and the purchasing company would not, on well-settled principles, be bound to see to its proper application by the directors of the selling company."

The question of the power of the Adamson Coal Company to sell its entire assets and property was not raised in the trial court, nor has it been presented to us, and it is therefore not considered; but see *Anderson v. Shawnee Compress Co.*, 17 Okla. 231, 87 Pac. 315, 15 L. R. A. (N. S.) 846.

The only question decided on this part of the case is that, where one corporation purchases all the property of another, and pays its full value in cash, there being no fraudulent intent, it is not liable to creditors of the selling corporation.

We therefore recommend that the case be remanded, with instructions to affirm the judgment against Peter Adamson, Jr., Maudie Adamson, and A. Z. Rudd, and to reverse and set aside the judgment against the Union Coal Company, and to dismiss the action as to it, and, as this judgment is affirmed in part and reversed in part, that the costs of this court be equally divided between the parties. Rev. Laws 1910, sec. 5261.

By the Court: It is so ordered.